UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

Becky Prothro, et al                                    Civil Action No. 6:04-868

versus                                                       Judge Tucker L. Melançon

Wal-Mart Stores, Inc., et al                   Magistrate Judge C. Michael Hill

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment, filed by defendants, Pacific Cycle, Inc. and Wal-Mart Louisiana, LLC,  [doc. no. 84], against plaintiff, Becky Prothro, individually and on behalf of her minor child, Jacob Prothro.  For the reasons that follow, the motion will be denied in part and granted in part.

*Background*

This product liability case  arises out of an accident occurring on or about April 13, 2003, when the brakes on the bicycle being ridden by Jacob Prothro allegedly failed and caused him to crash into a tree.  *R.1, Plaintiff's Complaint.*  As a result of the crash, Jacob Prothro landed on the bar of the bicycle causing his penis and genitals to be slashed open.  *Id.*  Becky Prothro, individually and on behalf of her minor child, brought the instant action under the Louisiana Products Liability Act ("LPLA") alleging that Jacob Prothro's injuries were caused by a defect in the manufacture of the bicycle.  *Id.*  Plaintiffs claimed that the rear brake and shifter wires located on the top tube of the bicycle at issue were the result of defective design and that defendants failed to provide a warning of the inherent danger of the product.  *Id.*  Plaintiff brought suit against SRAM Corporation,

Mongoose, Mongoose Bicycles, Mongoose Enterprises, L.L.C., Pacific Cycle, L.L.C. and Wal-Mart Stores, Inc. for the manufacture and marketing of the bicycle. *Id., ¶¶ 5 & 6.* SRAM Corporation was dismissed on summary judgment on November 30, 2005. *R. 75.* At the January 11, 2006 pretrial conference hearing, plaintiffs' withdrew their defective design claim as to the top tube routing of the brake wires and maintained that defendants' failure to provide padding over the brake wires was a design defect under the LPLA. *01/11/06 Pretrial Conference.*

*Summary Judgment Standard*

A motion for summary judgment shall be granted if the pleadings, depositions, and affidavits submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56.* Once the movant produces such evidence, the burden shifts to the respondent to direct the attention of the court to evidence in the record sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The responding party may not rest on mere allegations made in the pleadings as a means of establishing a genuine issue worthy of trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. *Id.* Before it can find that there are no genuine issues of material fact, however, the

court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

*Analysis*

*A. LPLA Claims*

Defendants move for summary judgment contending that "(1) the [bicycle's] exposed wires do not constitute an unreasonably dangerous condition and are not a 'defect' within the meaning of the LPLA; (2) plaintiff cannot prove the wires at issue caused his injury; (3) plaintiffs cannot prove a defective design or mis-manufacture with respect to either the front or back breaks [sic] on the bicycle at issue; and (4) the wires located on the top tube of the bicycle at issue are or should be obvious to the ordinary user, and therefore defendants had no duty to warn." *Motion for Summary Judgment.*

*1. Unreasonably Dangerous Condition*

As to the defect claim, defendants contend that plaintiffs' experts, Brian Durig and Alfred Wang, have acknowledged that there are other manufacturers in the bicycle industry that place exposed wires on the top tube, as was done in this case. *Depositions of Brian Durig and Alfred Wang.* Defendants further contend that plaintiffs' experts have no literature, industry standards or applicable regulations that prohibit the placement of wires on the top tube of a bicycle. Rather, defendants assert that their expert, Dave Mitchell, has concluded that the design of the bicycle at issue, including the placement of the wires, is common in the industry and complies with all applicable regulations, and therefore does not

constitute a design defect or unreasonably dangerous condition. *Affidavit of Dave Mitchell.*

As previously noted, at the January 11, 2006 pretrial conference hearing, plaintiffs withdrew their defective design claim related to the brake wires being routed on the top tube and now assert that the bicycle in question was defective because it was designed without a padded covering over the top tube mounted brake wires. Citing Louisiana Revised Statute § 9:2800.56, plaintiffs argue that the LPLA "is clear that a design is unreasonably dangerous if there exists an alternative design capable of preventing the plaintiffs' injury and the gravity of this injury outweighs the manufacturers' burden in adopting the safer alternative design." Plaintiffs contend that they can meet this burden based on the factual and expert testimony as well as photographic evidence. Specifically, plaintiffs cite the deposition testimonies of their expert, Bryan Durig, a mechanical engineer, and of Pacific Cycle's corporate representative, Brian Baldis, that other bicycles manufactured by Pacific Cycle and/or sold at Wal-Mart at the same time as the bicycle at issue were constructed with a bar pad covering top mounted brake wires. Plaintiffs also cite Baldis' testimony that a top tube pad would have cost no more than $0.75 per bike, and that Pacific's profit margin is roughly $12.00 per bicycle. Thus, plaintiffs argue, construction of the bicycle with a top tube pad was an alternative design which would have prevented Jacob Prothro injury and which outweighed the manufacturers' burden in adopting the design. Plaintiffs further argue that defendants' position that the bicycle's design was not defective

because the routing of cable along the top tube of a bicycle was not in violation of federal regulations is contrary to the standard provided in the LPLA, cited above.

Based on the record before the Court, there are genuine issues of material fact as to whether or not the failure to provide a top tube pad over the brake wires on the bicycle at bar was a design defect which caused Prothro's injury. While defendants assert that regulatory compliance, including consumer product safety regulations, precludes liability under the LPLA, they provide no statutory or jurisprudential support for their position. Accordingly, defendants' motion will be denied as to design defect.

## 2. *Cause of the Injury*

Defendants also contend that plaintiffs cannot prove that Jacob Prothro cut himself on the exposed wires in question. In support of their position, defendants point to the testimony of Jacob Prothro as well that of his treating physicians and emergency room personnel indicating that his clothes were not torn in the accident which lacerated his genitals. *Depositions of Jacob Prothro; Dr. Carter; Dr. Harmon.* Defendants assert that because Jacob Prothro could not say with certainty that the wires caused his lacerations and because the healthcare professional indicated that some tearing of the clothes would seem likely if the wires had cut the genitals, plaintiffs' claim is merely speculative and should be dismissed.

In his deposition, Jacob Prothro stated that as he was proceeding down the levee and realized he was going to hit a tree he tried applying the brakes but they

didn't work. *Depo. of Jacob Prothro*. After hitting the tree he slid off the seat and hit the bar on the bicycle. *Id.* Prothro's response to whether he knew what he got cut on was "the brake wires." *Id*. In response to further questioning as to whether he knew for sure that the exposed wire cut him, Prothro stated "that's pretty much the only thing that could have cut me. I don't know for sure." *Id.*

While the testimony of Prothro's treating physicians provides that it seemed that Prothro's clothing would have been cut just as his genitals were cut, the testimony does not establish that his injury was not caused by the exposed brake wires. Rather, the record before the Court establishes genuine issues of material fact as to the cause of Prothro's injury. Thus, defendants' motion will be denied in that regard.

### 3. *Failure of the Brakes*

Defendants also contend that plaintiffs have no evidence to support their claim that the bicycle's brakes failed and caused Jacob Prothro to strike a tree, which in turn caused him to cut his genitals on the bicycle's exposed wires. Defendants assert that plaintiffs' experts' opinions that the brakes at issue were not effective at the time of inspection does not indicate whether the condition arose before the incident or as a result of it. Rather, defendants point to plaintiffs' testimony that they had noticed no problem with the brakes on the bicycle prior to the incident as further support that plaintiffs cannot prove that brake failure caused Jacob Prothro's injuries. More particularly, defendants assert that plaintiffs'

expert, Durig, conducted no objective tests on the brakes, and therefore, his opinion that the brakes were defective should be struck.

The record before the Court provides evidence of brake failure of the bicycle in question or the possibility that the brakes did not function as intended. In his deposition testimony, as cited in the foregoing section, Jacob Prothro stated that the brakes on the bicycle did not work during the incident in question. *Depo. of Jacob Prothro*. The deposition of Durig, plaintiffs' expert, provides that the rear brakes were not assembled in the manner called for in the owners manual in that the levers were set 60 degrees below horizontal rather than 30 degrees as called for in the manual. *Depo. of Durig.* Durig also noted in his report that uneven wear on the brake pads indicated that the rear brakes were not adjusted to the manufacturer's specifications and opined that this misalignment would have provided insufficient stopping power and led Jacob Prothro to believe that the brakes had failed. *Report of Durig.* Further, plaintiffs point out in their Supplemental Memorandum, *R. 128*, that the report of defendants' expert, David Mitchell, stated that "the handlebar mounted brake levers were noted to be at slightly different angles at the time of the inspection." *Report of Mitchell.* Plaintiffs again point to Mitchell's report in which Mitchell noted a "slight reduction in the height of the right rear brake pad to rim compact point." *Report of Mitchell.*

Based on the foregoing, the record establishes genuine issues of material fact with regard to the issue of brake failure in this matter and defendants' motion will be denied.

## *4. Inadequate Warning*

Finally, as to the LPLA claims, defendants contend that because the alleged defective design related to the exposed wires on the bicycle was open and obvious to the ordinary reasonable user, plaintiffs have no claim for inadequate warning.

Plaintiffs assert that a review of the owner's manual as well as the testimony of their company representatives reveal, without dispute, that defendants provided "no warning to their customers about the dangers of purchasing an improperly sized bicycle, about the dangers of riding a bicycle with exposed metal wires and braze-ons running along the top tube, and supplying a bicycle where the brakes are negligently and defectively adjusted and installed by the manufacturer." *R. 118.* Plaintiffs contend that defendants have no support for their argument that the warning, or lack of warnings, were suitable for a nine year old child such as Jacob Prothro.

Under the LPLA, "a manufacturer is not required to provide an adequate warning about his product when ⋯ the user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic." La. Rev. Stat. § 9:2800.57. The adequacy of a warning is evaluated in light of the knowledge and expertise of the user of the product. *See Todd Shipyards Corp. v.*

*Hercules, Inc*., 859 F.2d 1224, 1225 (5th Cir.1988) ("A manufacturer's duty to warn is limited 'where the purchaser or the user has certain knowledge or sophistication, professionally or otherwise, in regard to the product." Based on the facts surrounding this case, defendants' motion as to inadequate warning will be denied.

## B.  Uninsurability Claim

Defendants deny plaintiffs' allegation that Jacob Prothro is uninsurable as a result of the instant incident and move the Court to dismiss the economic portion of plaintiff's claims related to increased premiums as a result of having to be placed in a high risk insurance pool.   In support of their position, defendants cite the affidavit of their expert, Richie Gregory.  *Affidavit of Gregory.*  Defendants assert that Gregory's opinion that Jacob Prothro would not have to be placed in a high risk pool, but could obtain normal coverage from any major medical provider, is consistent with the opinions of plaintiff's treating physicians.  *Id.*

Plaintiffs state in their opposition that "Becky Prothro reported to the life care planner that she attempted to obtain traditional health insurance for Jacob Prothro and was unable to do so.  Thereafter, plaintiffs' life care planner consulted with an insurance benefits counselor who confirmed this fact and gave Ms. Bauer information regarding high risk pool insurance."   In opposing a motion for summary judgment the responding party must direct the court to evidence in the record sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex*, 477 U.S. at 322-23.  The responding party may not rest on mere

allegations as a means of establishing a genuine issue worthy of trial. *Anderson*, 477 U.S. at 248-49. As plaintiffs have offered no competent summary judgment evidence that Jacob Prothro is unable to obtain traditional health insurance as a result of his injury, defendants' motion for summary judgment will be granted.

*Conclusion*

Based on the foregoing, defendants' motion for summary judgement will be denied as to the LPLA claims and granted as to the issue of Jacob Prothro's uninsurability.